IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SELVIE GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 1:19-cv-604-ECM |
| ) | [WO] |
| BIOMAT USA, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Now pending before the Court are the Defendant Biomat USA, Inc.'s ("Biomat") motion to strike (doc. 89) and motion to exclude (doc. 90). In the former, Biomat asks the Court to strike the deposition testimony of Gayle Coulter and to exclude her as a witness at trial. In the latter, Biomat asks the Court to exclude from trial Sarah and Natasha Griffin. For the reasons explained below, the motion to strike (doc. 89) is due to be DENIED, and the motion to exclude (doc. 90) is due to be GRANTED.

**II.   BACKGROUND**

This case flows from an incident on May 17, 2018, in which Plaintiff Selvie Griffin ("Griffin") tried to donate plasma at a facility owned and operated by Biomat. Following what Griffin alleges was negligent mistreatment, he claims he was injured, and so sued Biomat.

As the case progressed, Biomat and Griffin properly disclosed several witnesses pursuant to Rule 26. Biomat designated Gayle Coulter ("Coulter"), a registered nurse, as an expert witness it planned to call at trial. Missing from Griffin's initial disclosures, however, were the three witnesses he now indicates he plans to call: Sarah Griffin (his mother), Natasha Griffin (his sister), or Coulter.

Later, Griffin properly deposed Coulter. After doing so, Griffin asked the Court to strike Coulter's report. Griffin argued that her report failed to set out the facts she relied upon for the conclusions she drew or the reasons she drew those conclusions, and so was deficient under Rule 26. He argued that Rule 37 thus required the report to be struck in its entirety. The Court did not get a chance to rule on the merits of that motion. Instead, Biomat voluntarily withdrew Coulter and filed a notice that it no longer planned to call her as a witness at trial. The Court then denied Griffin's motion to strike as moot.

Shortly before trial, Griffin filed the final list of witnesses he planned to call. Therein, he indicated that he expected to call Sarah and Natasha Griffin, and expected to call Coulter by deposition. Biomat objected to all three witnesses and filed the two motions the Court now considers.

### III.   ANALYSIS

**A.   Gayle Coulter's Deposition and Appearance as a Witness at Trial**

Biomat's motion to strike presents a take on "the vexing and surprisingly little explored question of whether one party should be able to . . . call at trial an expert designated by an opposing party as expected to be called at trial, but whom the designating

2

party has announced it will not call at trial." *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 238 (N.D. Iowa 1996).  Griffin does not seek to call Coulter, Biomat's former expert witness, live at trial—rather, he seeks only to introduce Coulter's former deposition testimony.  Biomat argues that he cannot do so:  because Griffin did not designate Coulter as an expert witness at least ninety days before trial in violation of Rule 26(a)(2), her testimony, in any form, should be excluded.  Biomat also argues that allowing Griffin to call Coulter would be duplicative of other witnesses Griffin plans to call, would be unfairly prejudicial, and would confuse the jury.

"Expert witnesses, who are expected to testify at trial, must be identified in the Joint Pretrial Stipulation and must meet the procedural requirements of Federal Rule of Civil Procedure 26(a)(2) . . . ." *Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296, 1315 (11th Cir. 2014).  Rule 26(a)(2) requires parties to disclose expert witnesses "at least 90 days before the date set for trial." Fed. R. Civ. P. 26(a)(2)(D)(i).  Parties must also provide to their opponents "a written report—prepared and signed by the witness," that contains, among other things, all the opinions the expert will express, and the facts, basis, and reasons for those opinions. Fed. R. Civ. P. 26(a)(2)(B).  With respect to Coulter, Griffin did none of these things.

Nevertheless, Griffin argues that he should be allowed to introduce Coulter's deposition testimony at trial.  He asserts that because Coulter was first designated as an expert by *Biomat*, it cannot claim any unfair surprise by her inclusion at trial.  Additionally,

3

Griffin notes that Coulter's deposition has already been taken, making it a part of the total body of evidence available to any party.

To start, Rule 26 cannot carry the burden Biomat asks of it.  The "rules governing expert disclosures are intended to *shield litigants from unfair surprise*, not to be used by opportunistic litigants as a sword to strike down witnesses whose identities and proposed testimony have been known to them from the outset of the lawsuit." *Kerns v. Pro-Foam of S. Ala., Inc.*, 572 F. Supp. 2d 1303, 1310 (S.D. Ala. 2007) (emphasis added).  There is no such unfair surprise here.  Biomat selected Coulter as its own expert witness and is well aware of Coulter's expertise, history, and conclusions.  At least as to Coulter's identity, the "risk of unfair surprise to [the] defendant here is exactly nil." *Id.*

There is no broad rule that automatically bars a party from calling a witness the opposing party designated.  On the contrary, "[o]nce a witness has been designated as expected to testify at trial, there may be situations when the witness should be permitted to testify for the opposing party." *Peterson v. Willie*, 81 F.3d 1033, 1037–38 (11th Cir. 1996).  The decision whether to allow this is "committed to the sound discretion of the district court." *Id.* at 1038 n.4.

Biomat seems to argue that *Chapman* bars Griffin from using Coulter's testimony.  In *Chapman*, the district court excluded the plaintiffs' experts on the grounds that their reports relied on unreliable methodology and failed to substantiate the appropriate conclusions. 766 F.3d at 1301–03, 1307, 1311.  Finding the plaintiffs without experts to prove their product liability case, the district court awarded summary judgment for the

4

defendant. *Id.* at 1303. On appeal, the plaintiffs argued that they should have been permitted to call the defendant's experts in lieu of their own. *Id.* at 1315.

The Eleventh Circuit disagreed. The plaintiffs "proposed their ability to use [the defendant's] experts and witnesses at trial almost six months *after* the [district] judge's . . . deadline for identifying experts, making complying with the procedural timely notice and disclosure requirements of Rule 26(a)(2) . . . impossible." *Id.* (emphasis in original) (citation omitted). Additionally, the plaintiffs hoped to use the defendant's experts to prove a different conclusion than the experts had otherwise reached and for which their reliability had not been demonstrated—thus attempting to "perform an end run around the [earlier] [*Daubert*] Order by calling witnesses who have not been vetted for reliability." *Id.* (second alteration in original) (quoting with approval the district court's summary judgment order). Given the district court's "broad discretion to exclude untimely disclosed expert-witness testimony," *id.* (quoting *Pride v. BIC Corp.*, 218 F.3d 556, 578 (6th Cir. 2000)), the Eleventh Circuit held that the plaintiffs were properly barred from "prov[ing] their case with admissible evidence from these alternative experts and witnesses," *id.* at 1316.

It is not definitively clear upon which of the two divergent grounds—a substantive *Daubert* violation or a procedural Rule 26 violation—the court in *Chapman* rejected the plaintiffs' use of the defendant's experts. In concurrence, Judge Jordan argued similarly, noting that he "would not suggest, as the court does in dictum, that the district court could have properly prevented the [plaintiffs] from relying on [the defendant's] own experts." *Id.* at 1317 (Jordan, J., concurring). He noted that the district court addressed those experts

5

only on the merits, and "did not exclude those experts under Rule 26." *Id.* The issue was also not raised on appeal, and the court's holding contrasted with other cases that held that "there is no surprise or prejudice" when a party "is permitted to use and rely on the expert testimony presented by the opposing party." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Certain Temporary Easements*, 357 F.3d 36, 42 (1st Cir. 2004) and *Kerns*, 572 F. Supp. 2d at 1309–12).

The *Chapman* court reviewed the district court's opinion "only for abuse of discretion." *Id.* at 1305 (majority opinion) (quotations and citation omitted). Because the district court below did not address any Rule 26(a) or timeliness issue, the Court here agrees that the Eleventh Circuit's opining on the applicability of that rule is dicta. *See also Rivas v. Cleveland Clinic Fla.*, 2018 WL 6326991, at *3 (S.D. Fla. Dec. 4, 2018) (explaining that the court in *Chapman* excluded the plaintiffs from relying on the defendant's experts "because those experts did not meet the *Daubert* qualifications. . . . In short, because the experts were not qualified to offer their opinions, *neither party* was permitted [to] use them"). Since the Court has "broad discretion to exclude untimely disclosed expert-witness testimony," *Chapman*, 766 F.3d at 1315 (citation omitted), it finds that Griffin's failure to include Coulter on his initial disclosures does not, by that fact alone, disqualify him from using her testimony at trial.

The Court's conclusion is underlined by the fact that here, two important things have already occurred: Coulter has already turned over her report and she has already been deposed. Courts largely agree that "once a party has given testimony through deposition

6

or expert reports, those opinions do not 'belong' to one party or another, but rather are available for all parties to use at trial." *Kerns*, 572 F. Supp. 2d at 1311; s*ee also House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 245 (N.D. Iowa 1996) ("[O]nce an expert is designated, the expert is recognized as presenting part of the common body of discoverable, and generally admissible, information and testimony available to all parties."); *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) ("[N]o party to litigation has anything resembling a proprietary right to any witness's evidence."); 6 Moore's Federal Practice § 26.80(1)(a) (3rd ed. 2021) ("Once a party has designated an expert witness as someone who will testify at trial, the later withdrawal of that designation . . . neither prevent[s] the deposition of that witness by the opposing party nor the expert's testimony at trial."). That is precisely the situation here. That Biomat later changed its mind and withdrew Coulter's expert designation poses no barrier to Griffin's use of that deposition at trial.

Biomat also argues that Coulter's testimony is unnecessarily duplicative and cumulative of Griffin's own expert, Deyal Riley, and thus should be excluded under Fed. R. Evid. 403. However, exclusion under Rule 403 "is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence. . . . [Thus, t]he rule permits exclusion only when" the danger of needlessly presenting cumulative evidence *substantially* outweighs probative value. *U.S. v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008) (alteration in original) (quotations omitted).

That danger is not present here. As courts have acknowledged, "[t]estimony on the same topic by different experts . . . is not needlessly cumulative where the experts will testify from different professional perspectives." *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 2010 WL 4225947, at *2 (S.D. Fla. Oct. 21, 2010) (collecting cases). Coulter is a registered nurse, whereas Riley is a phlebotomy technician. These professional perspectives are not so similar as to be needlessly cumulative or to warrant exclusion under the extraordinary remedy of Rule 403.

However, even though Griffin may present Coulter's deposition testimony at trial, he may *not* do so with abandon. While Biomat cannot rightfully claim surprise as to Coulter's identity, expertise, or history, it remains unclear upon which of Coulter's conclusions Griffin plans to rely, and whether Biomat is prepared to address or rebut those conclusions. This ambiguity potentially lends itself to undue prejudice against Biomat.

The contrast between two cases the parties rely upon supplies a helpful illustration. In *Kerns*, which forms the foundation of Griffin's argument, the court allowed the plaintiffs to call the defendant's expert in his case-in-chief (even though the plaintiffs did not name the expert in their Rule 26(a) disclosures). 572 F. Supp. 2d at 1308–12. The court found that there was no undue prejudice to the defendant because it still planned on calling the expert, and because the parties agreed that the plaintiffs planned only to elicit testimony they could also elicit on cross-examination. *Id.* at 1311 & n.12. Even though the plaintiffs "failed to narrow down or identify precisely what they intend to elicit from [the expert] by calling him as a witness in their case-in-chief," the court assumed "[the] plaintiffs

8

intend[ed] to call [the expert] to testify as to opinions he ha[d] already given in this case (i.e., no new opinions)." *Id.* at 1308 n.6. Since the plaintiffs' planned testimony could have been elicited on cross-examination, the issue reduced to little more than a question of "at what point in the trial [the expert's] previously stated opinions will be elicited by plaintiffs' counsel." *Id.* at 1311 n.12. The court's answer was, in essence, anytime.

By contrast, a case Biomat points to, *New Hampshire Insurance Co. v. Blue Water Off Shore, LLC*, 2009 WL 1160230 (S.D. Ala. Apr. 29, 2009), presented a different scenario. In *Blue Water*, the plaintiff insurance company sought a declaratory judgment that it was not obligated to pay out on an insurance policy for a boat that struck an obstruction and sank while its captain was allegedly intoxicated. *See N.H. Ins. Co. v. Blue Water Off Shore, LLC*, 2009 WL 2230827 (S.D. Ala. July 20, 2009). The defendant boat owner's expert submitted a report limited to two opinions: that the boat's captain "had ample time and opportunity following the allision to consume sufficient alcohol to account for his 0.14 reading; and (2) that [the captain] was not under the influence of alcohol at the time of the allision." *Blue Water*, 2009 WL 1160230, at *1. The plaintiff subsequently deposed the defendant's expert and in doing so, elicited testimony concerning the reliability of a specific breathalyzer and Alabama's protocol for using it, as well as the "physiological effects of various levels of alcohol in the bloodstream." *Id.* Though it had not done so before (contrary to the strictures of Rule 26(a)), the plaintiff informed the defendant a month before trial that it intended to introduce the expert's deposition testimony on those topics. *Id.*

The district court granted the defendant's subsequent motion in limine to bar the plaintiff from reading those deposition excerpts at trial. *Id.* at *2. The court explained that because the plaintiff did not identify the expert as its own, the defendant had no time to track down a new expert before trial, and "had no incentive to cross-examine [the expert] on the subject matters for which [the plaintiff sought] to call him or to prepare him, prior to deposition, to meet those topics." *Id.* This harm was exacerbated because the plaintiff sought to use the expert's *deposition*, meaning the defendant "[could not] attempt even a cross-examination." *Id.*

The court also explained that the conclusion reached in *Kerns* did not apply. *Id.* at *1. Whereas in *Kerns*, the plaintiff sought to call the defendant's expert to present evidence that could have been presented on cross-examination, in *Blue Water* the plaintiff was intending to use the defendant's expert to "express opinions which are divorced from those for which [the defendant] identified him and which consequently *cannot* be elicited on cross-examination." *Id.* (emphasis added).[1] The court went on to conclude that though the plaintiff could introduce *some* of the expert's deposition, *id.* at *1 n.1, it was prohibited from using the deposition "to offer expert testimony beyond the scope of cross-examination," *id.* at *2.

The same concerns that animated the court in *Blue Water* are also present here. When Coulter's deposition was taken, Biomat was under no impression that it needed to challenge the questions Griffin asked, prepare Coulter on topics outside her report, or track

---

[1] Notably, the same judge, Judge William H. Steele, drafted both opinions.

down for itself a different expert to rebut other, potentially adverse, opinions that Coulter may hold. To balance these considerations, the Court follows the path taken in *Blue Water*: Griffin can read from Coulter's deposition, but only to the extent the deposition discusses opinions contained in Coulter's report or discusses evidence that Griffin could have otherwise raised in cross-examination. Griffin is not allowed to read portions of the deposition in which Coulter provides opinions not contained in her report. Nor may Griffin inform the jury that Coulter was originally retained and designated by Biomat. *See Peterson*, 81 F.3d at 1037–38 (holding that the district court erred in allowing the introducing party to "elicit the fact that [the expert] had been previously retained by an attorney representing" the other side).[2]

### B.   Sarah and Natasha Griffin's Appearances as Witnesses at Trial

Parties are required to, "without awaiting a discovery request, provide to the other parties . . . the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Parties must also supplement or correct any such disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to do so, and if such

---

[2] However, if Biomat attempts to discredit Coulter's qualifications, Griffin may "attempt to rehabilitate" Coulter by reading portions of the deposition that indicate Biomat "had thought highly enough of the witness to consult [her] originally." *Peterson*, 81 F.3d at 1038 n.5.

failure was neither harmless nor substantially justified, a court may exclude that witness from trial. Fed. R. Civ. P. 37(c)(1). It is the burden of the non-disclosing party to establish that any failure to disclose was either substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citation omitted).[3]

Griffin did not disclose the names of Sarah or Natasha Griffin in his initial Rule 26 disclosures or in response to interrogatories. He did not otherwise supplement or correct these responses to identify Sarah or Natasha Griffin. But Griffin argues he does not need to. Instead, he asserts that because the identity of Sarah Griffin emerged during the discovery process, he is exempted per Fed. R. Civ. P. 26(e)(1)(A) from any duty to disclose her.[4] During his deposition, Griffin explained that he lived at his house with his mom, which he argues placed Biomat on notice that his mother was a potential witness with discoverable information.

Supplementation of initial disclosures is only required "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). When determining whether a witness not otherwise disclosed has been made known to the other parties during discovery, courts in this circuit focus "on whether the moving party is aware that the [witness] is an individual with discoverable information." *Ojeda-Sanchez v. Bland Farms, LLC*, 2010 WL 2382452,

---

[3] While the Court recognizes that *Michell v. Ford Motor Co.* is an unpublished opinion, the Court finds its analysis to be persuasive.

[4] Griffin makes this argument only regarding Sarah Griffin, his mother. Natasha Griffin's existence appears to be a fact newly known to Biomat, and Griffin makes no argument for why the Court should allow Natasha Griffin to testify at trial.

at *1 (S.D. Ga. June 14, 2010). For example, in *Ojeda-Sanchez*, the court was asked to strike the affidavits of two different witnesses offered as evidence of contract negotiations. *Id.* at *2. Both witnesses were mentioned during depositions with other individuals. *Id.* Nevertheless, the very fact of their mention was not sufficient to save their affidavits from exclusion. Instead, the court struck the affidavit of one of the witnesses who was identified only as a member of the defendant's sales department. *Id.* The court explained that "this limited disclosure" was not enough to alert the plaintiffs "to the fact that [the witness] had discoverable information pertaining to contract negotiations." *Id.* By contrast, however, the court did not strike the affidavit of the other witness, who was identified as the former supervisor who negotiated the very arrangement about which the lawyer was inquiring. *Id.* The court thus found that the plaintiffs "should have been aware that [the witness] had discoverable information related to the topics testified to in his affidavit," and so declined to strike that affidavit. *Id.*

Courts generally do not strike later-disclosed witnesses if their eventual mention accompanies some indication that the witness has further knowledge relevant to the case. For example, in *Shackelford v. Publix Super Markets, Inc.*, the court did not strike the affidavits of three witnesses whom the court found had been adequately identified during the discovery process.[5] 2014 WL 5148461, at *5–6 (N.D. Ala. Oct. 14, 2014). Five months before discovery closed, the plaintiff had provided the defendant with a copy of the

---

[5] The court in *Shackelford* denied the motion to strike *six* witnesses, but three of those were on the grounds that the plaintiff substantially justified her delay in identifying them. 2014 WL 5148461, at *6.

13

affidavit by the undisclosed witness she would later file. *Id.* at *6. The two other witnesses who later filed affidavits had been identified during the plaintiff's deposition—the plaintiff named them both as co-workers, employed by the defendant. *Id.* She also explained that at least one of them had heard their manager make discriminatory comments. *Id.* at *6 n.4. The court thus found that the plaintiff had satisfied her Rule 26 obligations with respect to the three witnesses and that striking their affidavits was unwarranted. *Id.* at *6.

Similarly, in *Brown v. Chertoff*, the court refused to strike the declarations of two undisclosed witnesses who had been identified in an interrogatory response as having "provided the information necessary to answer" the question. 2009 WL 50163, at *5 (S.D. Ga. Jan. 7, 2009). Because the interrogatory response made clear that the two witnesses, though missing from Rule 26 disclosures, had pertinent information to the case, the court found no reason to strike their declarations. *Id.*

Griffin believes he has made a disclosure in the same vein. In so arguing, he points to *Watts v. Hospitality Ventures, LLC*, 2008 WL 220798 (M.D. Ala. Jan. 25, 2008). In *Watts*, the court declined to strike the affidavit of a witness who, though missing from initial disclosures, had been described in a deposition as a "[c]ompany admin" who called herself the "Mother ship" because she was "very valuable in all assets." *Id.* at *2. The court noted that the witness had also been identified in disclosed emails, and that the questioning attorney herself had noted that "[m]aybe [she] should be talking to [the witness]." These disclosures were sufficient to put the plaintiff on notice that the witness

14

"was a person with discoverable information," and so no discovery sanction was warranted. *Id.*

Griffin's reading of *Watts* is broad—he appears to argue that, per *Watts*, if the opposing party is made aware of a witness' name in any capacity during discovery, Rule 26(e) releases the non-disclosing party from any obligation to supplement their initial disclosures. That reading omits a key analysis that *Watts* and its kin undertake: whether enough emerged during discovery to make clear the newly disclosed individual *may have discoverable information*.

Rule 26(a)(1)(A)(i) requires parties to identify potential witnesses along with *what they may know*. Rule 26(e)(1)(A) requires a correction to inadequate disclosures unless "the *additional or corrective information*" has otherwise come out during the discovery process. Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Griffin identifying his mother and mentioning that they live together is not providing the *additional or corrective information* that Biomat lacked: that Griffin's mother is a potential witness with discoverable information about his damages. *See also L-3 Comms. Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1168–69 (D. Colo. 2015) ("To satisfy the 'made known' requirement, a party's collateral disclosure of the information that would normally be contained in a supplemental discovery response must [be] in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient.").

15

The mention of Sarah Griffin in her son's deposition was fleeting and inconsequential.[6] Griffin does not directly or impliedly connect her to the facts at issue here. Without doing so, Griffin does not correct her absence from his Rule 26 disclosures.

This is made doubly clear considering her omission from Griffin's interrogatory responses. Interrogatory #5 (appears to have)[7] asked Griffin to "[s]tate the name, telephone number, and address of any person who is in possession of any knowledge . . . of the facts and circumstances of the incident referred to in the complaint or of the events leading up to or following the incident or of the claims asserted in this lawsuit." (Doc. 90 at 1–2). Griffin, in response, provided only the names of Biomat employees, not the names of his mother or sister. (*Id.* at 2).

Griffin argues that the identity of his mother was not a responsive answer to Interrogatory #5, but he is mistaken. It does not ask only for those with knowledge of his allegedly ill-fated venipuncture—it seeks the name of any individual "who is in possession of *any knowledge* . . . of the facts and circumstances of the incident referred to in the complaint or *of the events leading up to or following the incident* or of the claims asserted in this lawsuit." (*Id.* at 1–2 (emphasis added)). How Griffin has changed under the stress

---

[6] Neither party attached Griffin's deposition transcript to their motion or brief, nor cited to where in the record it could be located. The Court is forced to rely upon the parties' representation of what he said. Griffin's own brief, sure to be the most generous light in which to view his own comments, states that he "identified Sarah Griffin as his mother and testified that she lived with him." (Doc. 105 at 2).

[7] Though Biomat cites to doc. 90-1, believing it to be Griffin's response to its interrogatories, that document is actually Griffin's response to Biomat's first request for production. It does not include the language of, or Griffin's answer to, Interrogatory #5. That said, Griffin does not appear to dispute the asserted language of Interrogatory #5, or contest what Biomat says his answer was. He argues only that his mother and sister were not responsive answers to that request—as such, the Court assumes that the assertion of what Interrogatory #5 asked, and how Griffin responded, are accurate.

of his medical ailments is clearly information following the incident he complains of. That she was missing from Griffin's response indicates to Biomat that she had no relevant information. Without a clearer indication during the discovery process that she did, the Court finds her identification during Griffin's deposition insufficient to move Griffin out from under the ambit of Rule 26(e)(1)(A) and to exempt him from his duty to supplement his initial disclosures.

Thus, by not supplementing his Rule 26 disclosures with the names of Natasha or Sarah Griffin, Griffin has violated that rule. To avoid sanctions under Rule 37, Griffin must demonstrate that this violation is either substantially justified or harmless. He does not do so. Indeed, he provides no justification for why his mother and sister were not previously disclosed and makes no argument for why allowing them to testify now would be harmless. The Court finds that Griffin has failed to satisfy his burden, and that Sarah and Natasha Griffin are due to be excluded from trial.

## IV.   CONCLUSION

Accordingly, it is hereby

ORDERED that Biomat's motion to strike Gayle Coulter (doc. 89) is DENIED to the following extent:

1. Griffin is permitted to read excerpts of Coulter's deposition at trial but may not read any portion introducing an opinion that is not otherwise contained in Coulter's expert report.

17

2. Griffin may not read any portion of the deposition indicating that Coulter was originally retained by Biomat, except to rehabilitate her testimony if Biomat otherwise attempts to impeach her qualifications or reliability.

It is further

ORDERED that Biomat's motion to exclude Sarah and Natasha Griffin (doc. 90) is GRANTED.

Done this 10th day of February, 2022.

        /s/Emily C. Marks
    EMILY C. MARKS
    CHIEF UNITED STATES DISTRICT JUDGE